# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:24-cv-00037-MR-WCM

| | |
|---|---|
| WAYNE K. SMITH, SR., Individually and as Personal Representative of the Estate of Wayne K. Smith, Jr., deceased,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>POLK COUNTY, et al.,<br><br>　　　　　　Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 59(e), or, in the Alternative, 60(b)(2) and 60(b)(6), and for Leave to File Third Amended Complaint [Doc. 48].

## I.    BACKGROUND

This action arises from the circumstances of the Decedent Wayne K. Smith, Jr.'s death.  On February 2, 2021, Defendant Deputy Ben Page noticed the Decedent speeding, activated his blue lights, and pursued the Decedent.  [Doc. 4 at ¶¶ 36-40].  The vehicles exceeded 75 miles per hour in a 45 mile-per-hour zone, and, as the vehicles neared a curve in the road,

the Decedent's vehicle "spun out of control and collided into a tree." [Id. at ¶¶ 38, 42-45]. The collision caused the Decedent's death. [Id. at ¶ 50].

On February 2, 2024, the Plaintiff Wayne K. Smith, Sr., individually and as the personal representative of the Decedent, initiated this action asserting various constitutional violations pursuant to 42 U.S.C. § 1983, violation of 42 U.S.C. § 1981, and claims for wrongful death, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. [Doc. 1]. The Plaintiff filed an Amended Complaint asserting the same claims on February 12, 2024. [Doc. 4]. The Defendants filed a Motion to Dismiss on April 24, 2024. [Doc. 6]. On January 13, 2025, the Magistrate Judge filed a Memorandum and Recommendation ("M&R") recommending that the Defendants' Motion to Dismiss be granted as to all claims against Defendants Polk County, Sheriff Timothy Wright, and Deputy Page except for the Plaintiff's § 1983 claim against Defendant Page in his individual capacity based on deliberate indifference to the Decedent's serious medical need and the Plaintiff's corresponding claim for punitive damages. [Doc. 10]. The M&R also recommended that the Plaintiff be directed to show cause as to why his claims against the remaining Defendant, Western Surety Company, which had not yet been served, should not be dismissed [Id. at 2 n.1, 23-24].

On April 7, 2025, the Court overruled the Plaintiff's objections to the M&R and accepted the M&R in full.  [Doc. 14].  In that Order, the Court explained that there were "no surviving claims arising out of (1) Deputy Page's actions during the high-speed chase, up to Deputy Page approaching the Decedent's vehicle after the crash; (2) unlawful seizure or excessive force; (3) alleged racial discrimination; (4) the County's policies; or (5) state law."  [Id. at 14].  As a result, since April 7, 2025, the only claims that have remained in this matter are a § 1983 deliberate indifference claim stemming from Defendant Page's alleged actions after the Decedent crashed into a tree, and the Plaintiff's corresponding claim for punitive damages.  [Id.].

On April 15, 2026, over a year after the Court accepted the M&R, the Plaintiff filed a motion seeking reconsideration of the Court's Order and leave to file a Third Amended Complaint.[1]  [Doc. 48].  For grounds, the Plaintiff contends that evidence developed through discovery in this matter is sufficient to state plausible § 1983 claims against Polk County and Sheriff

---

[1] The Plaintiff previously filed a Second Amended Complaint for the sole purpose of substituting Auto-Owners Insurance Company ("Auto-Owners") for Western Surety Company as the Defendant surety in this matter.  See [Docs. 21-23].  Although the Second Amended Complaint restates the previously dismissed claims, it is undisputed that the Second Amended Complaint, which was filed after the Court's Order accepting the M&R, did not revive any of the previously dismissed claims or assert any new claims.  As a result, there is no claim pending against Defendant Auto-Owners.  Rather, the Plaintiff alleges that Defendant Auto-Owners is the surety on Defendant Page's bond.  [Doc. 23 at ¶¶ 12-14].

Wright pursuant to <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978) for failure to train Defendant Page, negligent hiring of Defendant Page, and a custom of deliberate indifference to Defendant Page's misconduct, as well as a plausible supervisory liability claim under 42 U.S.C. § 1983.  [Doc. 48-1 at 16-17].  Having been fully briefed, the Plaintiff's motion is ripe for disposition.

## II.    STANDARD OF REVIEW

### A.    Motion for Relief from Judgment

The Plaintiff's motion for relief from judgment has been filed pursuant to Rules 59(e), 60(b)(2), and 60(b)(6) of the Federal Rules of Civil Procedure, and both parties have spilled a fair amount of ink regarding the appropriateness of those rules for the instant motion.  [Doc. 48-1 at 5; Doc. 60 at 3-6; Doc. 63 at 6-8].  Motions under Rule 59(e) and Rule 60(b), however, are appropriate only after entry of final judgment.  <u>See</u> Fed. R. Civ. P. 59(e), 60(b); <u>see also</u> <u>Fayetteville Invs. v. Com. Builders, Inc.</u>, 936 F.2d 1462, 1469 (4th Cir. 1991).  Because no final judgment has been entered in this matter, neither Rule 59(e) nor Rule 60(b) is an appropriate vehicle for the Plaintiff's motion.  Instead, the appropriate vehicle is Rule 54(b), which provides that an interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities

of the parties." Fed. R. Civ. P. 54(b). The Fourth Circuit has permitted district courts to consider motions inappropriately filed under Rules 59(e) and Rule 60(b) as motions for reconsideration under Rule 54(b), and the Court will do so here. See Fayetteville Invs., 936 F.2d at 1470.

A Rule 54(b) motion seeks reconsideration and modification of an interlocutory order on grounds that "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005). The standard for a Rule 54(b) motion "closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), but it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)). "However, a motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." In Re: Aqueous Film-Forming Foams Prods. Liab. Litig., No. 2:18-MN-2873-RMG, 2025 WL 4072671, at *1 (D.S.C. Oct. 14, 2025).

**B.  Motion for Leave to File Third Amended Complaint**

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15.  However, "a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse 'to grant the leave without any justifying reason.'"  Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.  Id.

**III.  DISCUSSION**

**A.  Compliance with Local Rules and Standing Orders**

**1.  Consultation Required by Local Rule 7.1(b)**

The Defendants contend that the "Plaintiff did not make any attempt to consult with Defendants prior to filing his motion," in violation of the Court's Local Rules.  [Doc. 60 at 1]; see also LCvR 7.1(b).  Counsel for the Plaintiff "acknowledges that no pre-filing conferral was conducted pursuant to Local Rule 7.1(b)."  [Doc. 63 at 4].  Moreover, counsel for the Plaintiff represents that the failure to confer "was not inadvertent—it was the product of a litigation-long pattern that made conferral an exercise in futility."  [Id.].

6

Counsel for the Plaintiff states that "[t]here was nothing to confer about" because counsel for the Plaintiff expected the Defendants to oppose the motion.[2]  [Id. at 5].

The Plaintiff's counsel's admissions establish that she intentionally violated the Court's rules.[3]  The Local Rules do not apply only when the Plaintiff's counsel expects acquiescence.  On this basis alone, the Plaintiff's motion may be subject to summary denial.  LCvR 7.1(b).  Nevertheless, in the interest of justice, the Court will address the motion on its merits.  The Court admonishes the Plaintiff's counsel to comply with the Court's rules and puts counsel for the Plaintiff on notice that any future motions filed without consultation in violation of Local Civil Rule 7.1(b) will be summarily denied.

### 2.    Artificial Intelligence

The Defendants contend that the Plaintiff's memorandum in support of the instant motion contains two fabricated quotations, along with multiple quoted statements lacking citation to any authority, and that such deficiencies suggest that the memorandum was drafted using artificial

---

[2] The Plaintiff complains that the Defendants took the "position" throughout discovery "that neither the vehicular pursuit nor policies are at issue in this case."  [Doc. 63 at 4].  The Court notes, however, that neither the vehicular pursuit nor the county's policies are, in fact, at issue in this case.

[3] The Plaintiff's counsel has also failed to show proper conferral or attempt to confer regarding one motion to compel and two motions for sanctions that are currently pending in this matter.  LCvR 7.1(b); see generally [Docs. 46, 61, 68].

intelligence and without adequate human verification. [Doc. 60 at 2, 4 n.1, 9 n.3, 14 n.4]. The Defendants further note that the Plaintiff did not file the required certification regarding use of artificial intelligence with the memorandum, in violation of the Court's Standing Order Regarding the Use of Artificial Intelligence, No. 3:24-mc-00104-MR (W.D.N.C. June 18, 2024) ("Standing Order"). [Id. at 2].

The Plaintiff's counsel acknowledges the failure to include the requisite certification and states that "the substance and factual record set forth in the opening brief are grounded in deposition transcripts, personnel records, and policy documents produced during discovery – not in AI-generated content." [Doc. 63 at 3]. The Plaintiff's counsel also acknowledges that "the 'quotation' attributed to Board of County Commissioners v. Brown, 520 U.S. 397 (1997) in Plaintiff's opening brief does not appear verbatim in that decision." [Doc. 63 at 3]. The Plaintiff's counsel nevertheless contends that the "very elementary legal principle for which Brown was cited . . . is accurately stated in Brown." [Doc. 63 at 3]. The Plaintiff's counsel similarly acknowledges a misquotation attributed to Laber v. Harvey, 428 F.3d 404, 426 (4th Cir. 2006) in the Plaintiff's opening brief and contends that the "operative point . . . is unambiguous Fourth Circuit law." [Doc. 63 at 3]. Finally, to "provide[ ] additional context for the one aspect of the Plaintiff's briefing that the Court

8

may find deficient," the Plaintiff's counsel represents that she was involved in a motor vehicle accident the day before filing the memorandum at issue. [Id. at 4].

The Plaintiff's counsel has not provided an adequate explanation for the fabricated quotations identified by the Defendants. The Plaintiff's counsel attempts to allay concerns about the fabricated quotations by stating that the principles of law for which the fabricated quotations were offered are nevertheless accurate. [Id. at 3]. That says nothing, however, about the inaccuracy of the fabricated quotations themselves. While the Plaintiff's counsel represents that the "substance and factual record" in the memorandum at issue were not "grounded" in "AI-generated content," the Plaintiff does *not* directly deny that the fabricated quotations of legal authority were the result of hallucinations by artificial intelligence. [Id.]. Moreover, in the midst of responding to concerns about use of artificial intelligence, the Plaintiff's counsel represents that "[e]very *factual* assertion in this Reply has been verified by the undersigned attorney." [Id. (emphasis added)]. The Plaintiff's counsel fails, however, to say anything about verification of the *legal* citations in the Reply, and the Plaintiff's counsel failed to submit the requisite certification regarding use of artificial intelligence with the Reply. [Doc. 63].

Counsel for the Plaintiff also failed to include the required certification regarding use of artificial intelligence with memoranda filed in support of three of the Plaintiff's four other pending motions in this matter. <u>See generally</u> [Docs. 46-1, 57-1, 61-1]. On May 21, 2026, counsel for the Plaintiff filed a certification regarding use of artificial intelligence in memoranda filed in support of the instant motion as well as in "any other filing that was made before this Court in which the certification was inadvertently left off." [Doc. 85 at 1]. That certification, however, does not cure the issue regarding the fabricated quotations in the Plaintiff's opening brief and the Plaintiff's counsel's insufficient explanation of those errors. Those errors, along with the Plaintiff's counsel's repeated failures to file timely certifications in compliance with the Court's Standing Order, raise serious questions about the Plaintiff's counsel's conduct. Accordingly, the Court will direct the Plaintiff's counsel to show cause as to why she should not be sanctioned for failure to comply with the Court's Standing Order. In so doing, the Plaintiff's counsel must explain the origin of the fabricated quotations and her repeated failure to provide timely certifications that comply with the Court's Standing Order prior to the filing of a general certification on May 21, 2026.

## B. Motions for Relief from Judgment and for Leave to Amend

The Plaintiff contends that evidence developed through discovery in this matter is sufficient to establish plausible <u>Monell</u> claims against Polk County and Sheriff Wright for failure to train Defendant Page, negligent hiring of Defendant Page, and a custom of deliberate indifference to Defendant Page's misconduct, as well as a plausible supervisory liability claim under 42 U.S.C. § 1983. [Doc. 48-1 at 16-17]. Accordingly, the Plaintiff asks the Court to reconsider its prior dismissal of the Plaintiff's <u>Monell</u> claim[4] and grant the Plaintiff leave to file a Third Amended Complaint. [Doc. 48-1 at 2-3].

"To hold a municipality liable for a constitutional violation pursuant to <u>Monell</u>, a plaintiff must establish 'the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.'" <u>Johnson v. Baltimore City, Maryland</u>, 163 F.4th 808, 821–22 (4th Cir. 2026) (quoting <u>Howard v. City of Durham</u>, 68 F.4th 934, 952 (4th Cir. 2023)). The official policy or custom must be the "moving force

---

[4] The Plaintiff repeatedly states that the Court previously dismissed the Plaintiff's "negligent hiring" claim. [Doc. 48 at 1; Doc. 48-1 at 2, 4, 6, 19]. That is incorrect, however, because the Plaintiff has never asserted a negligent hiring claim. Negligent hiring is never mentioned, let alone discussed, in the Plaintiff's First Amended Complaint [Doc. 4], the Magistrate Judge's Memorandum and Recommendation [Doc. 10], or the Court's Order [Doc. 14] accepting the M&R. While the Court acknowledges the Plaintiff's desire to assert a negligent hiring claim in a Third Amended Complaint, the Court admonishes the Plaintiff not to misrepresent the Court's rulings or the Plaintiff's own prior assertions.

[behind] the constitutional violation."  <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389 (1989).

Regarding an alleged failure to train, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." <u>Id.</u> (internal quotation marks omitted).  "The specifically identified deficiency in training also must be shown to have in fact caused the ultimate violation." <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 341 (4th Cir. 1994).

Regarding <u>Monell</u> claims based on a custom or practice of "condonation"—of failing to stop or correct a pattern of unconstitutional conduct—a Plaintiff must allege a "persistent and widespread" practice of condoning constitutional violations.  <u>Owens v. Baltimore City State's Att'ys Off.</u>, 767 F.3d 379, 403 (4th Cir. 2014).  "A sufficiently close causal link between such a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom."  <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987).  "[F]ailure to correct the known practices must be such as to make the specific violation 'almost

12

bound to happen, sooner or later,' rather than merely 'likely to happen in the long run.'"  Id.

Here, the only available predicate constitutional violation for a Monell claim is the Plaintiff's Fourteenth Amendment deliberate indifference claim against Defendant Page.  The Plaintiff contends that discovery has revealed evidence about Defendant Page's driving record, his prior on-duty vehicular accidents, and instances of his alleged misconduct, as well as evidence about Polk County's decision to hire Defendant Page and its responses to his prior on-duty vehicular accidents and the crash at issue in this matter. [Doc. 48-1 at 6-11].  None of that evidence, however, would provide a sufficient basis for the Plaintiff to state a plausible Monell claim or § 1983 supervisory liability claim against Polk County or Sheriff Wright based on Defendant Page's alleged deliberate indifference, which concerns only Defendant Page's actions regarding the Decedent's medical needs after the Decedent's vehicle collided with a tree.  The Plaintiff has not identified an official policy, custom, or practice regarding treatment of medical needs, nor has the Plaintiff identified an official policy, custom or practice that has a sufficient causal connection to the alleged constitutional violation by Defendant Page.

Moreover, the Plaintiff filed his motion for leave to amend just twenty-two days prior to the then-scheduled dispositive motions deadline. This is far too late. The Court dismissed nine of the claims in the Plaintiff's Amended Complaint more than a year prior to the instant motion for leave to amend. Those claims were dismissed pursuant to Rule 12(b)(6) because they were not plausibly pled. The Plaintiff now contends that discovery uncovered evidence supporting those claims. The fact that the Plaintiff went fishing for evidence regarding dismissed claims, however, does not rehabilitate the Plaintiff's failure to plausibly present allegations supporting those claims. Instead, it merely shows that the Plaintiff failed to do adequate pre-filing investigation and filed suit without a sufficient understanding of his own case.

Accordingly, the Court will deny both the Plaintiff's motion for relief from judgment, which the Court has construed as a motion for reconsideration, and the Plaintiff's motion for leave to amend, as the motion is untimely and, in any event, such amendment would be futile. The Plaintiff's case proceeds only on the Plaintiff's deliberate indifference claim against Defendant Page in his individual capacity and the Plaintiff's corresponding claim for punitive damages.

## IV.  CONCLUSION

Having considered the Plaintiff's characterization of the additional evidence revealed during discovery, the Court reaffirms its prior dismissal of the Plaintiff's <u>Monell</u> claim and will deny the Plaintiff's motion.  The Court further admonishes the Plaintiff's counsel to comply with the Court's rules regarding conferral and will direct the Plaintiff's counsel to show cause as to why she should not be sanctioned for violating the Court's Standing Order.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 59(e), or, in the Alternative, 60(b)(2) and 60(b)(6), and for Leave to File Third Amended Complaint is hereby **DENIED**.  The Plaintiff's case will proceed only on the Plaintiff's deliberate indifference claim against Defendant Page in his individual capacity and the Plaintiff's corresponding claim for punitive damages.

**IT IS FURTHER ORDERED** that within **fourteen (14) days** of entry of this Order the Plaintiff's counsel is hereby **DIRECTED TO SHOW CAUSE** in writing as to why she should not be sanctioned for failure to comply with the Court's Standing Order Regarding the Use of Artificial Intelligence.

15

**IT IS SO ORDERED.**    Signed: June 3, 2026

Martin Reidinger
Chief United States District Judge